UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Christian Gaton,

                Petitioner,

      - v. -

United States of America,

                Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**16 Civ. 3868 (RLE)**
**02 Cr. 401 (KMW)**

# MEMORANDUM OF LAW OF THE GOVERNMENT IN OPPOSITION TO PETITIONER CHRISTIAN GATON'S MOTION TO VACATE UNDER 28 U.S.C. § 2255

PREET BHARARA
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, NY 10007

Elizabeth A. Hanft
Assistant United States Attorney
    *Of Counsel*

**PRELIMINARY STATEMENT**

The Government respectfully submits this memorandum of law in opposition to petitioner Christian Gaton ("the petitioner" or "Gaton")'s motion to vacate his sentence of imprisonment under 28 U.S.C. § 2255.  On or about February 15, 2007, an eleven-count indictment, S4 02 Cr. 401 (KMW) (the "Indictment"), was returned, charging Gaton in multiple counts, including acts of narcotics trafficking, money laundering, and murder, for his involvement with the Hidalgo Organization, a racketeering enterprise.  Gaton pleaded guilty to Count Six of the Indictment, which charged him with causing the death of an individual named Celeste Suazo through the use of a firearm, in violation of 18 U.S.C. § 924(j).  On June 29, 2011, the Court sentenced Gaton to 405 months' imprisonment, the upper limit of the applicable Sentencing Guidelines range, on Count Six.

Gaton now argues that his conviction must be vacated on three grounds: first, because the Supreme Court's ruling in *Johnson* v. *United States*, __ U.S. __, 135 S. Ct. 2551 (2015) disturbs his conviction under 18 U.S.C. § 924(j); second, because the Supreme Court's holding in *Molina-Martinez* v. *United States*, __ U.S. __, 136 S. Ct. 1338 (2016) empowers him to request a sentence correction, or alternatively to withdraw his plea, due to the sentencing court's alleged error in determining his base offense level of forty-three; and third, because his guilty plea was not made knowingly and voluntarily, in light of *Johnson*.

*Johnson*'s holding has no relevance to Gaton's conviction, and the sentencing court correctly applied the Sentencing Guidelines to Gaton's case.  For those reasons and for all the reasons set forth below, Gaton's petition should be denied.

**BACKGROUND**

A. **The Offense Conduct**

The petitioner was a member of the Hidalgo Organization (the "Organization"), a criminal organization that engaged in narcotics trafficking, murder, and money laundering. (Presentence Investigation Report ("PSR") ¶ 20).  During the period from at least 1987 until 2002, the Organization distributed thousands of kilograms of cocaine and hundreds of kilograms of heroin throughout the New York City area, including through retail drug distribution spots. (PSR ¶ 22).  Gaton joined the Organization in or about 1994.  (PSR ¶ 25).

In or about the fall of 1994, Elvis Espinosa-Zabala and Pedro Ventura, two members of the Organization who owned a Bronx bodega that served as one of the Organization's retail cocaine distribution spots, and where Gaton worked, became aware that a woman named Celeste Suazo had begun operating a competing drug spot at a parking lot a few blocks from their bodega.  (PSR ¶ 27). Espinosa-Zabala and Ventura decided that Suazo had to be murdered in order to eliminate this new source of competition, and they enlisted Roberto Cristian Urena Almonte ("Urena"), another member of the Organization, to carry out the murder.  (*Id.*). Subsequently, Urena offered to commit Suazo's murder with Gaton, his brother-in-law, who wanted thereby to expand his role in the Organization.  (PSR ¶ 28).  Gaton met with Urena, Espinosa-Zabala, and Ventura in advance for the purpose of planning Suazo's murder. (PSR ¶ 28).

In the early morning of November 6, 1994, Gaton and Urena followed Suazo on her way home from her job at the parking lot, with Urena driving the car and Gaton sitting in the passenger seat.  (PSR ¶¶ 29–30).  At approximately 12:30 a.m., as their target approached the front entrance of her building, Gaton got out of the car and shot Suazo dead with a Tec-9 semi-

automatic assault weapon. (PSR ¶ 30). Gaton fired at least twenty-five rounds, striking Suazo at least seventeen times. (*Id.*). Following the shooting, Gaton ran back to the car, and he and Urena fled the crime scene. (*Id.*).

On July 17, 2005, Gaton was arrested in the Dominican Republic. He was subsequently extradited to the United States.

### B. The Plea Agreement and Sentencing

On July 16, 2009, Gaton pleaded guilty, pursuant to a plea agreement (the "Plea Agreement"), to Count Six of the Indictment, which charged him with "using, carrying, possessing, and discharging a firearm during and in relation to a crime of violence and a drug trafficking crime, and aiding and abetting the same, thereby causing the death of Celeste Suazo through the use of a firearm" in violation of 18 U.S.C. § 924(j). (Exhibit A (Plea Agreement) at 1). As detailed in the Plea Agreement, that charge carried a maximum sentence of life imprisonment. (*Id.*). Under the terms of the Plea Agreement, Gaton waived his right to file a direct appeal or to "litigate under Title 28, United States Code, Section 2255 and/or Section 2241, any sentence within or below the Stipulated Guidelines Range" of 324 to 405 months. (Exhibit A at 4). That provision bound the parties "even if the Court employ[ed] a Guidelines analysis different from that stipulated to" in the Plea Agreement. (*Id.*).

On June 29, 2011, the Court sentenced Gaton to 405 months' imprisonment, a sentence at the top of the applicable Guidelines range.

### C. The Instant Section 2255 Motion

On or about May 19, 2016, Gaton filed a motion to vacate his conviction pursuant to 28 U.S.C § 2255. (Dkt. 1 ("Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, or Correct Sentence By A Person in Federal Custody") ("Pet.")). Gaton's petition rests on three grounds.

First, Gaton argues that his conviction's predicate offense, which he cites as "conspiracy to distribute narcotics," falls under Section 924(c)'s "risk-of-force" clause, and that the Supreme Court's 2015 ruling in *Johnson* renders this provision unconstitutional and provides retroactive relief. (Pet. at 4).  Second, Gaton asserts that the sentencing court erred in determining that his base offense level was forty-three, pursuant to United State Sentencing Guidelines ("U.S.S.G." or "the Guidelines") Section 2A1.1 because he "neither admitted to first degree premeditated murder nor was he charged and convicted of such an offense."  (Pet. at 5).  Gaton seeks relief for that alleged error based on *Molina-Martinez*.  (Pet. at 5).  Finally, Gaton contends that, in light of *Johnson*, his guilty plea was not knowing and voluntary because "neither the counsel nor the Court informed him that the crime of conspiracy lacked as an element the use, attempt[ed] use, or threaten[ed] use of physical force," which, he argues, is necessary to support his conviction. (Pet. at 6).

For the reasons discussed below, Gaton's Section 2255 motion should be denied in its entirety.

## APPLICABLE LAW

Title 18, United States Code, Section 924(j) provides that an individual "who, in the course of a violation of subsection (c), causes the death of a person through the use of a firearm, shall . . . be punished by death or by imprisonment for any term of years or for life" if the killing is a murder "as defined in section 1111."[1]  18 U.S.C. § 924(j)(1).

Section 924(c) provides for enhanced punishment of those who, *inter alia*, use or carry a firearm "during and in relation to any crime of violence or drug trafficking crime."  18 U.S.C.

---

[1] Title 18, United States Code, Section 1111(a) defines murder as "the unlawful killing of a human being with malice aforethought." 18 U.S.C. § 1111(a).  "[A]ny [] kind of willful, deliberate, malicious, and premeditated killing" qualifies as murder in the first degree under Section 1111. *Id.*

5

§ 924(c)(1)(A). The statute defines "drug trafficking crime" as "any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46." 18 U.S.C. § 924(c)(2). The statute defines "crime of violence" as an offense that is a felony and either:

    (A)    has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
    (B)    that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3)(A), (B). Section 924(c)(3)(A) is commonly referred to as the "force clause." Section 924(c)(3)(B) is commonly referred to as the "risk-of-force clause."

## ARGUMENT

### I. GATON'S PLEA AGREEMENT BARS A COLLATERAL CHALLENGE AS TO HIS SENTENCE

Because "[w]aivers of the right to appeal a sentence are presumptively enforceable," *United States* v. *Arevalo*, 628 F.3d 93, 98 (2d Cir. 2010) (citing *United States* v. *Gomez-Perez*, 215 F.3d 315, 319 (2d Cir. 2000)), the Second Circuit has routinely upheld them, finding them "unenforceable only in very limited situations, 'such as when the waiver was not made knowingly, voluntarily, and competently, when the sentence was imposed based on constitutionally impermissible factors . . . , when the government breached the plea agreement, or when the sentencing court failed to enunciate any rationale for the petitioner's sentence.'" *Arevalo*, 628 F.3d at 98 (quoting *United States* v. *Gomez-Perez*, 215 F.3d at 319). Accordingly, "[i]n no circumstance . . . may a petitioner, who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, then appeal the merits of a sentence conforming to the agreement." *United States* v. *Salcido-Contreras*, 990 F.2d 51, 53 (2d Cir. 1993).

"A knowing and voluntary waiver of the right to litigate pursuant to Section 2255 is also valid and enforceable." *United States* v. *Martinez*, No. 13-CV-3454 (KMK), 2014 WL 7146846, at *5 (S.D.N.Y. Dec. 12, 2014) (quoting *Abramo* v. *United States*, No. 12-CV-1803 (JSR), 2014 WL 1171735, at *8 (S.D.N.Y. Mar. 21, 2014)); *see also Frederick* v. *Warden, Lewisburg Corr. Facility*, 308 F.3d 192, 195 (2d Cir. 2002) ("There is no general bar to a waiver of collateral attack rights in a plea agreement."); *Russo* v. *United States*, 313 F. Supp. 2d 263, 265 (S.D.N.Y. 2004) ("The [Second] Circuit has specifically held that a waiver of a right to appeal in a plea agreement includes a waiver of a right to file a § 2255 petition challenging his or her sentence.") (citing *United States* v. *Pipitone*, 67 F.3d 34, 39 (2d Cir. 1995)).

Here, pursuant to the Plea Agreement, Gaton agreed "not [to] file a direct appeal, nor litigate under Title 28, United States Code, Section 2255 and/or Section 2241, any sentence within or below the Stipulated Guidelines Range set forth above (324 to 405 months)." (Exhibit A at 4). Gaton received a sentence of 405 months, which falls within the Guidelines range, and he does not argue in his petition that his waiver of appellate rights was uninformed or involuntary,[2] nor does the record so suggest. At Gaton's plea, the Court asked Gaton if he understood that he could "not appeal or otherwise challenge" a sentence within or below the Guidelines range set forth in the Plea Agreement (Exhibit B (Transcript of Plea Proceeding) at 11), and Gaton answered affirmatively. At Gaton's sentencing, the Court remarked that, while a

---

[2] Although Gaton contends, as the third ground of his instant motion, that "[p]ost-*Johnson*, [his] guilty plea is unconstitutional because it was not made knowing[ly] and voluntary[il]y" (Pet. at 6), Gaton does not suggest that he was in any way unable to knowingly and voluntarily plead guilty and waive his appellate rights as he understood them at the time, which remains correct today. In any event, there is no evidence to support such a claim. Instead, Gaton appears to argue that, because (as he contends) *Johnson* has cast doubt on the validity of Section 924(c), his guilty plea was not knowing and voluntary because he was not aware of the elements that he now contends were required to support his conviction. As discussed further *infra*, however, because *Johnson* in no way disturbs Gaton's conviction under Section 924(j), Gaton's claim that his guilty plea was not knowing and voluntary is baseless.

7

defendant has "a statutory right to appeal [his] sentence under certain circumstances[, ] a defendant may waive those rights as part of a plea agreement," and Gaton in fact had "entered into a plea agreement which waive[d] some or all of [his] rights to appeal the sentence itself." (Exhibit C (Transcript of Sentencing Proceeding) at 24).

Finally, in a recent summary order, the Second Circuit explicitly held that a waiver provision essentially identical to that in Gaton's Plea Agreement foreclosed a petitioner's efforts to mount a *Johnson* challenge to his Guidelines calculation. *See United States* v. *Blackwell*, No. 15-1031, 2016 WL 3190569 (2d Cir. June 1, 2016) (summary order). After noting that the defendant's plea agreement stipulated that he "committed the instant offense subsequent to sustaining one felony conviction for a crime of violence," the Court concluded that "[b]ecause Blackwell's sentence conformed to his plea agreement, he received the benefit of that agreement and he has waived any challenge to his sentence on the basis of *Johnson*." *Id.* at *2. Gaton secured significant benefits from the Plea Agreement, which did not require him to plead guilty to the racketeering count, the narcotics conspiracy count, the money laundering counts, or the other 924(c) counts. He ultimately received a term of 405 months' imprisonment, a sentence within the Stipulated Guidelines Range of 324 to 405 months and well below the mandatory life sentence that he would have faced if he had proceeded to trial. Having gained the benefit of the bargain, Gaton now cannot collaterally attack the conditions on which that benefit was premised. *See id.*; *United States* v. *Simmon*, 13 Cr. 855 (PGG), 2015 WL 9480039, at *5 (S.D.N.Y. Dec. 28, 2015) ("In the Second Circuit, parties may not challenge terms in a plea agreement unless enforcing the term would violate a defendant's due process rights. . . . Having stipulated in his plea agreement that his 2005 second degree robbery conviction is a 'crime of violence,'

8

Defendant cannot argue the contrary now."). To the extent Gaton challenges his sentence, therefore, his petition fails.

## II. THE PETITIONER'S CLAIMS LACK MERIT

Gaton argues that his conviction under 18 U.S.C. § 924(j) for causing the death of Celeste Suazo through the use of a firearm and in the course of a violation of subsection (c) cannot stand. First, Gaton claims that his conviction's predicate offense, which he cites as "conspiracy to distribute narcotics," falls under Section 924(c)'s risk-of-force clause. According to Gaton, the Supreme Court's 2015 ruling in *Johnson* renders this provision unconstitutional. (Pet. at 4). Second, Gaton alleges that the sentencing court erred in determining his base offense level according to the Guidelines, and moves for relief under the Supreme Court's 2016 decision in *Molina-Martinez*. (Pet. at 6). Finally, Gaton contends that, in light of *Johnson*, his guilty plea was not knowing and voluntary. (Pet. at 7).

Each of these arguments fails. Because Gaton's 924(j) conviction was based on his having possessed a firearm in relation to drug trafficking crime under Section 924(c)(2) and a crime of violence under Section 924(c)(3)(A)'s force clause—and because *Johnson* does not disrupt either of these offense categories—his conviction under Section 924(j) should stand. Furthermore, since Gaton cannot point to any evidence suggesting that this Court committed a sentencing error or that his plea was uninformed or involuntary, his petition fails on those grounds as well.

### A. The Supreme Court's Ruling in *Johnson* Does Not Disturb Gaton's Conviction Because Gaton's Conviction Involved Both a Drug Trafficking Crime and a Crime of Violence Involving the Use of Force

As the first ground of his petition, Gaton argues that his conviction under Section 924(j) must be vacated in light of the Supreme Court's 2015 decision in *Johnson*. In bringing this claim

9

as part of his Section 2255 motion, the petitioner attempts to join a number of defense motions being filed throughout this district and the country, arguing that because the Supreme Court struck down the residual clause of the Armed Career Criminal Act ("ACCA") in *Johnson*, similar clauses in other statutes, such as Section 924(c)(3)(B), are similarly void. As to Section 924(c)(3)(B), the Second Circuit has rejected that argument. *See United States* v. *Hill*, No. 14-3872-cr (2d Cir. Aug. 3, 2016) (slip op.). But even if such an argument had merit, which it does not, Gaton's petition fails to acknowledge that the conduct to which he pled guilty—that is, the murder of Celeste Suazo on behalf of a drug-distribution conspiracy—qualifies both as a drug trafficking crime under Section 924(c)(2) and as a crime of violence pursuant to Section 924(c)(3)(A)'s force clause. Because *Johnson* did not affect either of those categories—and since either one of them is sufficient to support Gaton's conviction under Section 924(j)—this claim should be dismissed.

### 1. Conspiracy to Distribute Narcotics Qualifies as a Drug Trafficking Crime under Section 924(c)(2), Which Is Unaffected by *Johnson*

Gaton pled guilty to Count Six of the Indictment, which charged him with using and possessing a firearm, and causing the death of a person through the use of that firearm, during and in relation to a crime of violence and a drug trafficking crime. *See* S4 02 Cr. 401 (KMW). Specifically, Count Six referred to the use and possession of a weapon, which resulted in the death of Celeste Suazo, during and in relation to the offenses charged in Counts Three (murder in aid of racketeering activity, in violation of Title 18, United States Code, Section 1959(a)(1)) and Five (narcotics conspiracy, in violation of Title 21, United States Code, Section 846) of the Indictment. Section 924(c) defines a drug trafficking crime as "any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export

Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46." 18 U.S.C. § 924(c)(2).  Gaton allocuted to precisely such conduct, describing how he had

> used a weapon in order to shoot a drug dealer named Celeste Suazo . . . . The murder of Ms. Suazo was ordered by Mr. Elvis Espinosa because she was competing with Mr. Espinosa for a sales spot.  I was working for Elvis Espinosa at this selling spot, and I participated in the distribution of more than five kilos of cocaine.

(Exhibit B at 13).  When asked whether he had committed the murder on behalf of the drug organization for which he was working, Gaton responded affirmatively.  (*Id.*).

Such conduct falls squarely within the Controlled Substances Act (21 U.S.C. 801, *et seq*.), specifically as conspiracy to distribute more than five kilograms of cocaine in violation of Title 21, United States Code, 841(b)(1)(A) and 846.[3]  Nothing in *Johnson* or its progeny disrupts the category of drug trafficking crimes defined in Section 924(c)(2), within which Gaton's conviction clearly falls.  On this basis alone, Gaton's conviction under Section 924(j) should be sustained.

### 2. Murder in Aid of Racketeering Constitutes a Crime of Violence Under Section 924(c)(3)'s Force Clause, Which is Unaffected by *Johnson*

In any event, in addition to constituting a drug trafficking crime, the petitioner's conduct of using and possessing a firearm in connection with the offense charged in Count Three—murder in aid of racketeering activity, in violation of Title 18, United States Code, Section 1959(a)(1)—qualifies as a "crime of violence" under Section 924(c)(3)(A)'s force clause.  A crime of violence "has as an element the use, attempted use, or threatened use of physical force against the person . . . of another." 18 U.S.C. § 924(c)(3)(A).  Murder by lethal shooting certainly satisfies that description.  *See United States* v. *Castleman*, 134 S. Ct. 1405, 1413-15

---

[3] Title 21 U.S.C. § 841(b)(1)(A)(ii) makes it a felony to, *inter alia*, knowingly distribute five kilograms or more of cocaine. Title 21 U.S.C. § 846 punishes the attempt or conspiracy to commit any offense defined in the subchapter.

11

(2014) (holding that, in the context of Title 18, United States Code, Section 922(g)(9), "the requirement of physical force is satisfied . . . by the degree of force that supports a common-law battery conviction," and noting that "[i]t is impossible to cause bodily injury without applying force in the common-law sense."); *Johnson* v. *United States* ("*Johnson I*"), 559 U.S. 133, 140 (2010) (defining "violent force" as "force capable of causing physical pain or injury to another person").  In his allocution, Gaton pleaded guilty to "us[ing] a weapon in order to shoot a drug dealer named Celeste Suazo" because she was competing with the Organization for a drug sales spot.  (Exhibit B at 13).  Gaton's use of a Tec-9 semi-automatic assault weapon to kill Suazo unambiguously satisfies the definition of physical force set forth in Supreme Court precedent. *See Castleman*, 134 S. Ct. at 1414-15; *see also United States* v. *Checora*, __ F. Supp. 3d __, No. 2:14cr457 (DAK), 2015 WL 9305672, at 11–12 (D. Utah Dec. 21, 2015) (holding that second-degree murder satisfied force clause of Section 924(c)(3)(A)); *United States* v. *Machado-Erazo*, 986 F. Supp. 2d 39, 53-54 (D.D.C. 2013) (murder was a "'crime of violence' because it is a felony that requires 'the use, attempted use, or threatened use of physical force against another person'").

Although *Johnson* held that 18 U.S.C. § 924(e)'s *residual* clause is unconstitutionally vague, *Johnson*, 135 S. Ct. at 2557, that decision did not invalidate 18 U.S.C. § 924(e)'s *force* clause, which uses language identical to § 924(c)'s force clause.  (In any event, even if Gaton had any argument that his murder of Celeste Suazo did not fall under the force clause of § 924(c), it would certainly fall within the risk-of-force clause of § 924(c), which the Second Circuit has held is unaffected by *Johnson*.  *See Hill*, No. 14-3872-cr, at 22, 34.)  Thus, Gaton's murder of Celeste Suazo still constitutes a crime of violence under the intact force clause of Section 924(c), which supports his conviction under Section 924(j).

### B. The Sentencing Court Did Not Err in Determining Gaton's Base Offense Level of Forty-Three

Gaton argues that the Court erred in finding that his base offense level was forty-three pursuant to the Guideline for First Degree Murder, which is codified at 18 U.S.C. § 1111(a). Citing to *Molina-Martinez*, Gaton contends that he is entitled to "correct the sentence" or "withdraw the plea." (Pet. at 6). But *Molina-Martinez* is inapposite here. That case holds that, where a defendant's Sentencing Guidelines range was erroneously calculated, and where the error was not preserved, the defendant is not required to provide additional evidence in order to demonstrate that the error affected his substantial rights. 136 S. Ct. at 1345. Here, in contrast, there was no error whatsoever in the Court's calculation of Gaton's Guidelines range. Even if Gaton's plea agreement did not bar him from bringing such a challenge, therefore, his argument would fail.

Section 924(j) explicitly cross-references Section 1111(a), providing for a punishment of death, life imprisonment, or a sentence of any term of years for those who commit murder "as defined in section 1111." 18 U.S.C. § 924(j)(1). Section 1111(a), in turns, describes as murder in the first degree "the unlawful killing of a human being with malice aforethought," including "any . . . kind of willful, deliberate, malicious, and premeditated killing." 18 U.S.C. § 1111(a). The Guideline that applies to that provision is found in Section 2A1.1, which establishes a base offense level of forty-three for first degree murder. The Application Notes to that Guideline state that it "applies in cases of premeditated killing," as well as when "death results from the commission of certain felonies" and "in cases in which the offense level of a guideline is calculated using the underlying crime (*e.g.*, murder in aid of racketeering . . .)." U.S.S.G. § 2A1.1, comment. (n.1).

Gaton committed the willful and premeditated murder of a rival drug dealer, which he planned pursuant to an order from a superior in the Organization. Although he now argues that he "neither admitted to first degree premeditated murder nor was he charged and convicted of such an offense," that claim is belied by the record.[4] Count Three of the Indictment charged Gaton with murder in aid of racketeering, and Count Six, to which Gaton pled guilty, refers to his having possessed a firearm during and in relation to, *inter alia*, the offense charged in Count Three. Just as Gaton allocuted, the murder he committed was "ordered by Mr. Elvis Espinosa because [Ms. Suazo] was competing with Mr. Espinosa for a sales spot." (Exhibit B at 13). As the Government described at Gaton's sentencing, Gaton "very much . . . participate[d] in the planning of th[e] crime," including by participating in at least one planning meeting. (Exhibit C at 12-13). In sentencing Gaton, the Court described the offense as "the shooting of a mother of three children in cold blood for money, that is, for the prospect of entering a drug conspiracy." (Exhibit C at 21). The Court therefore properly applied the Guideline for First Degree Murder referenced in Section 924(j)(1), and thus correctly determined that Gaton's base offense level was forty-three. (*Id.*).

As to the Plea Agreement, Gaton stipulated that the killing of Celeste Suazo "was murder as defined in Title 18, United States Code, Section 1111(a)" and that the base offense level was therefore forty-three. (Exhibit A at 2). Having so stipulated, and having received significant consideration in exchange for his guilty plea, Gaton may not now contend otherwise. *See United States* v. *Riggi*, 649 F.3d 143, 147 (2d Cir. 2011) (plea agreements are construed "according to contract law principles," tempered by "special due process concerns for fairness

---

[4] Gaton argues that he was charged with "at best 'second degree' murder" (Pet. at 6), apparently because of the New York State statutes charged in connection with Racketeering Act Two. But murder in the second degree, in New York State, includes premeditated murder, and therefore falls within the category of murder covered by Section 2A1.1. *See* N.Y.P.L. § 125.25.

14

and the adequacy of procedural safeguards") (internal quotation marks omitted).  No such due process concerns exist here.  The Plea Agreement's stipulation calculating Gaton's base offense level as forty-three—which in any event does not constitute error—must therefore stand.

### C. Gaton's Guilty Plea Was Knowing and Voluntary

Finally, Gaton argues that, in light of *Johnson*, his guilty plea is unconstitutional because it was not knowing and voluntary.  According to Gaton, that is so because "neither the counsel nor the Court informed him that the crime of conspiracy lacked as an element the use, attempt[ed] use, or threaten[ed] use of physical force necessary to support § 924(c)'s definition of a crime of violence or a drug trafficking crime, nor that conspiracy does not require any particular overt act to be found guilty of such a crime."  (Pet. at 7).  As noted above, however, *Johnson* in no way disturbs Gaton's conviction.  Regardless of whether the *Johnson* ruling in fact extends to Section 924(c)(3)(B)'s risk-of-force clause, which the Second Circuit has held it does not, neither that decision nor its progeny has in any way disturbed the category of drug trafficking crimes defined in Section 924(c)(2) or the category of crimes of violence involving the use of force defined in Section 924(c)(3)(A).  The facts underlying Gaton's conviction—that he used a firearm in the course of murdering Celeste Suazo in furtherance of a narcotics conspiracy—therefore still constitute a crime under Section 924(j).

When asked to set forth the elements of the offense to which Gaton was pleading guilty, the Government stated that it would prove at trial that Gaton "used, carried and possessed a firearm, that he did so during and in relation to a crime of violence and a drug trafficking crime, that he caused the death of a person through the use of that firearm, that that death qualified as a murder and that the defendant acted knowingly, unlawfully and willfully."  (Exhibit B at 12). The defendant indicated that he understood that those were the elements which the Government

15

would be required to prove at a trial, and, so indicating, replied affirmatively that his plea was "voluntary and made of [his] own free will." (*Id.*)  Those elements, of which the defendant was fully informed on the record, remain sufficient today to support the defendant's conviction.  The defendant's knowledge, or lack of knowledge, regarding the elements required to satisfy a 924(c) conviction that neither involves a drug trafficking crime nor a crime involving the use of force is not relevant here, and therefore did not render the defendant's plea unknowing or involuntary.

Gaton does not otherwise point to any evidence that his plea was not knowing or voluntary.  During Gaton's plea, the Court went to great lengths to establish the defendant's competency, asking specific questions to ensure that he was no longer suffering any psychiatric effects from the drugs that he had once been prescribed and had since stopped taking. (Exhibit B at 6).  At the close of the plea hearing, the Court concluded "that the defendant understands the nature of the charge against him and the consequences of a plea of guilty" and "that the plea is voluntary and knowing and that there is a factual basis for it." (*Id.* at 14).  In light of this record and Gaton's failure to provide any evidence to the contrary, the petitioner's claim that his plea was not knowing and voluntary fails.

## **CONCLUSION**

For the foregoing reasons, the petitioner's motion to vacate should be denied. Because the petitioner has not made a substantial showing of the denial of a constitutional right, no certificate of appealability should issue.

Dated:	New York, New York
	August 4, 2016

			Respectfully submitted,

			PREET BHARARA
			United States Attorney for the
			Southern District of New York

	By:	*/s/ EHanft*
			Elizabeth A. Hanft
			Assistant United States Attorney
			(212) 637-2334

**AFFIRMATION OF SERVICE**

I, Elizabeth A. Hanft, affirm under penalty of perjury as follows:

1. I am an Assistant United States Attorney in the Southern District of New York.

2. On August 4, 2016, I caused a copy of the foregoing to be served on the petitioner by certified mail at the following address:

> Christian Gaton (53320-054)
> F.C.I. – Allenwood
> P.O. Box 2000
> White Deer, PA 17887

Dated: New York, New York
August 4, 2016

_____
Elizabeth A. Hanft
Assistant United States Attorney
(212) 637-2334